UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

B. D.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

Case No. 1:25-cv-00810

Hon. Jane Beckering
U.S. District Judge

______________________________/

**REPORT AND RECOMMENDATION**

This Report and Recommendation addresses Plaintiff's appeal of Administrative Law Judge (ALJ) Kearney's decision denying Plaintiff's request for Supplement Security Income (SSI). This appeal is brought pursuant to 42 U.S.C. § 405(g).

The record before the Court demonstrates that Plaintiff suffers from a number of severe medically determinable impairments, including affective disorder, anxiety, personality disorder, post-traumatic stress disorder (PTSD), and polysubstance abuse disorder. Plaintiff asserts that the ALJ's formulation of Plaintiff's Residual Functional Capacity (RFC) is not supported by substantial evidence and erroneously applies the law. Plaintiff's primary arguments are that the ALJ failed to properly take a "fresh look" at the evidence and relied on the prior ALJ's analysis without changing the RFC, and that the ALJ failed to properly consider opinion evidence. The Commissioner asserts that the ALJ did not rely on the prior ALJ analysis and fully

considered the evidence and that the ALJ properly evaluated opinion evidence.

For the reasons stated below, the undersigned recommends that the Court affirm the ALJ's decision.

## I. Procedural History

### A. Key Dates

The ALJ's decision notes that Plaintiff applied for SSI on December 30, 2022, alleging an onset date of March 8, 2021. ECF No. 5-2, PageID.31. Plaintiff's claim was initially denied by the Social Security Administration (SSA) on May 30, 2023. *Id*. The claim was denied on reconsideration on October 9, 2023. *Id*. Plaintiff then requested a hearing before an ALJ. ALJ Kearney conducted a hearing on Plaintiff's claim on June 3, 2024, and issued his decision on July 25, 2024. *Id*., PageID.31,46. Plaintiff timely filed this lawsuit on July 25, 2025.

### B. Summary of ALJ's Decision

The ALJ's decision correctly outlined the five-step sequential process for determining whether an individual is disabled. ECF No. 5-2, PageID.32-33.

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity (SGA) from March 20, 2021. *Id*., PageID.33.

At Step Two, the ALJ found that the Plaintiff had the following severe impairments: affective disorder, anxiety, personality disorder, PTSD, and polysubstance abuse disorder. *Id*., PageID.34. In his decision, the ALJ discussed a number of non-severe impairments, including diabetes, thyroid disorder, and frequent headaches. *Id*. The ALJ also discussed the Paragraph B criteria, finding

that Plaintiff had moderate limitations in each of the criteria and that his mental impairments did not cause at least two marked limitations or one extreme limitation in paragraph B criteria. *Id.*, PageID.36.

At Step Three, the ALJ found that the Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*, PageID.35. The ALJ specifically commented on the impairments listed in 12.04, 12.06, 12.08, and 12.15. *Id.*

Before going on to Step Four, the ALJ found that the Plaintiff had the following RFC:

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to simple work-related decisions and simple routine tasks with no assembly line work, or strictly enforced daily production quotas, and few changes in the routine work setting. The claimant can never be required to interact with the general public, but can work in close proximity to other co-workers, but only with brief, incidental interaction where there are no required tandem job tasks requiring cooperation with other co-workers to complete the task. The claimant can tolerate occasional interaction with supervisors, throughout the workday.

*Id.*, PageID.37.

The ALJ devoted eight pages to discussing Plaintiff's RFC. This discussion included the following:

- a summary of the regulations regarding how the ALJ will address Plaintiff's symptoms, *id.*;
- a summary of Plaintiff's statements, *id.*, PageID.37-38;

- a summary of the medical records relating to mental health treatment from Dr. Mehta, MD, Dr. Isinguzo, MD, and Nurse Practitioner (NP) McLemore of Woodlands Behavioral Healthcare Network, *id.*, PageID.38-43, and records from Licensed Professional Counselor (LPC) Lowe of Mighty Warrior Wellness relating to bipolar symptoms, *id.*, PageID.39-42;
- a summary of opinions from Physician's Assistant (PA) Slough from Cassopolis Family Clinic, LPC Lowe, and from the state consultants PhD Kriauciunas, PsyD Simone, Dr. Nguuen, DO, and Dr. Blum MD, *id.*, PageID.34-35, 40-41, 43; and
- an explanation of how the ALJ arrived at his decision on the Plaintiff's RFC, *id.*, PageID.42-44.

At Step Four, the ALJ concluded that Plaintiff had no Past Relevant Work (PRW). *Id.*, PageID.44

At Step Five, the ALJ determined that Plaintiff was not disabled under the Social Security Act by considering Plaintiff's age of 35 years old, high school education, and RFC, and his ability to perform jobs that existed in the national economy.

## II. Standard of Review

Review of an ALJ's decision is limited to two issues: (1) "whether the ALJ applied the correct legal standards," and (2) "whether the findings of the ALJ are supported by substantial evidence." *Winslow v. Comm'r of Soc. Sec.*, 566 F. App'x

418, 420 (6th Cir. 2014) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)); 42 U.S.C. § 405(g). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and the Commissioner's findings are conclusive provided they are supported by substantial evidence. 42 U.S.C. § 405(g).

Substantial evidence is defined as more than a mere scintilla of evidence but "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and whatever evidence in the record fairly detracts from its weight. *Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984) (citations omitted). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords the administrative decision maker considerable latitude and acknowledges that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993).

## III. Analysis

First, Plaintiff argues that the ALJ failed to take a fresh look at the new evidence

in formulating the RFC by improperly adopting the RFC from the prior ALJ decision dated March 19, 2021.

ALJ Kearney discussed the prior decision, explaining as follows:

> Romualdas Kriauciunas, PhD, and Colette Simone, PsyD, reviewed the claimant's case file at the request of the State agency, the Division of Disability Determination Services, on April 27, 2023
>
> and October 8, 2023, respectively. Pursuant to *Drummond*, both adopted the mental residual functional capacity as set forth by Judge Jones on March 19, 2021. Dr. Simone noted that there is new evidence of a diagnosis of post-traumatic stress disorder, but it is not material as the claimant's functioning has remained essentially the same overall with no significant decline resulting in marked limitations in any domain or any adjustments to the mental residual functional capacity that would impact the ALJ final decision. Dr. Simone further noted that the claimant has been compliant with treatment and has responded positively to treatment. There have been no episodes of decompensation requiring a higher level of care, the mental status examinations are generally within normal limits, and claimant is able to communicate effectively and interact appropriately with treatment providers (B4A and B6A).

*Id.*, PageID.43-44. Plaintiff argues that applying *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997), and failing to take a "fresh look" at the new evidence in accordance with *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929 (6th Cir. 2018), is reversable error. Under *Earley*, when an application is made for a new period of disability, the "ALJ must give the new application a 'fresh look' where it 'contain[s] new evidence or satisf[ies] a new regulatory threshold ... while being mindful of past rulings and the record in prior proceedings.'" *Dennis D. v. Comm'r of Soc. Sec.*, No. 23-3667, 2024 WL 1193662, at *4 (6th Cir. Mar. 20, 2024). Contrary to Plaintiff's argument, that is exactly what ALJ Kearney did in this case.

First, ALJ Kearney added PTSD as a severe impairment, and adjusted the prior ALJ's polysubstance use disorder to a history of polysubstance use disorder. ECF No. 5-2, PageID.34. Second, ALJ Kearney discussed the medical notes from

treating provider PA Slough and found his March 20, 2023, opinion persuasive concerning sitting, standing, and walking, but not persuasive regarding limitations to occasional lifting, carrying, stooping, and climbing ladders or stairs, and missing more than 4 days of work per month. *Id*. The ALJ considered Dr. Nguyen and Blum's opinions that Plaintiff had no severe physical impairments and found these opinions to be persuasive. *Id*., PageID.35.

Third, ALJ Kearney explained his reasoning for the RFC by addressing Plaintiff's symptoms, including his claims of depression, attachment disorder, PTSD, borderline personality, and bipolar disorder by considering the new medical and opinion evidence. *Id*., PageID.37-38. The ALJ reviewed Plaintiff's treatment with Dr. Mehta, including his PTSD diagnosis. In March of 2021, Dr. Mehta found that Plaintiff was "alert; he was calm and cooperative; he was able to engage in a meaningful conversation; his speech was normal and was not pressured; his thought process was linear and coherent; he denied having paranoid ideations; his mood was congruent, and his affect was appropriate; his cognitive function was grossly intact; and his insight and judgment were fair." *Id*., PageID.38. In December, Dr. Mehta found that Plaintiff had poor insight and impaired judgment. *Id*., PageID.39. In March of 2022, Plaintiff felt that the Seroquel medication he was taking was controlling his temper but made him sleep too much, so Dr. Mehta lowered the dosage. *Id*. By July of 2022, Dr. Mehta thought Plaintiff exhibited manic symptoms and diagnosed him with bipolar I disorder and adjusted his medications. *Id*. Plaintiff reported in December that he stopped taking the medication Vraylar

due to feeing suicidal and depressed and that he was doing much better. Dr. Mehta adjusted Plaintiff's medications. In January of 2023, Plaintiff began seeing Counselor Lowe for therapy related to his bipolar disorder diagnosis. *Id.* Counselor Lowe found that Plaintiff's "appearance was appropriate; his motor activity was unremarkable; his behavior was appropriate; his speech was normal; his mood was euthymic; his insight was fair; his judgment was fair; his memory was intact; his attention and concentration were distractible; his thought process was unremarkable; his thought content was appropriate; and his perception was unremarkable." *Id.*, PageID.39-40.

Plaintiff also began treatment with Dr. Isinguzo in January of 2023. Dr. Isinguzo started Plaintiff on Prozac, and by February Plaintiff reported that he no longer felt depressed. *Id.*, PageID.40. Plaintiff complained of his lack of sleep, and Dr. Isinguzo added the medication Trazodone. *Id.* On May 3, 2023, Plaintiff reported that the medications were working, and on July 19, 2023, Plaintiff reported that he was doing well. *Id.*, PageID.41. On October 23, 2023, Plaintiff reported an episode lasting three weeks of having trouble sleeping, with lack of focus, and that he was irritable, irrational, angry, sad, and emotional. *Id.*, PageID.42. Examination revealed normal findings. Dr. Isinguzo increased the Prozac medication and continued Plaintiff on the medications Caplyta, Prazosin, and Trazodone. *Id.* Plaintiff saw N.P. McLemore on March 11, 2024. *Id.* Examination revealed normal findings. She increased the medications Prazosin and continued Prozac, Caplyta, and Trazodone. *Id.*

The ALJ summarized his findings:

> The undersigned finds that the mental status examinations and course of treatment in this case are not consistent with disabling mental impairment and are more consistent with the stated residual functional capacity. During the relevant timeframe, the claimant was initially treating with Dr. Mehta of Woodlands. On examination of the claimant by Dr. Mehta from May 5, 2021 through August 4, 2021, the claimant was consistently alert; he was consistently calm and cooperative; he was consistently able to engage in a meaningful conversation; his speech was consistently normal and was not pressured; his thought process was consistently linear and coherent; the claimant consistently denied having paranoid ideations; his mood was consistently congruent and his affect was consistently appropriate; his cognitive function was consistently grossly intact; and his insight and judgment were consistently fair (see above). On examinations of the claimant by Dr. Mehta from December 2, 2021 through December 22, 2022, the claimant was consistently cooperative; he was usually calm though on one occasion he exhibited compulsive activity; his speech was usually within normal limits though it was pressured on two occasions, but his communication was consistently normal; his mood was usually within normal limits though on one occasion it was manic; his thought process was usually logical and coherent though on one occasion it was logical and coherent, but tangential; his thought content was usually within normal limits including no paranoia, but it was paranoid on one occasion; his memory was consistently intact; his attention and concentration were good or fair; his insight was poor or fair; and his judgment ranged from impaired to intact (see above and see March 31, 2022 at B2F/75-77). As recounted above, on January 18, 2023, the claimant started to treat with Chidinma Isinguzo, MD, of Woodlands. On examinations of the claimant by Dr. Insinguzo, the claimant was consistently cooperative and calm; his speech was consistently within normal limits; his communication was consistently normal; his mood was consistently within normal limits; his thought process was consistently logical and coherent; his thought content was consistently within normal limits including no paranoia; his memory was consistently intact; his attention and concentration were consistently good; and his judgment was consistently intact (see above and see February 15, 2023 at B2F/18-19; March 8, 2023 at B2F/10-12; July 19, 2023 at B6F/10-12). On examinations, there are no findings indicative of fatigue, tiredness, or low energy. During the relevant timeframe, the claimant has treated at Woodlands and at Mighty Warriors Wellness on a regular basis. However, the claimant has not been psychiatrically hospitalized, there are no Emergency Department visits for acute psychiatric symptoms, and the claimant has not required or received intensive outpatient mental health services. From all of this, the undersigned finds that the claimant's symptoms and limitations are not as severe as alleged.

*Id.*, PageID.42-43.

The record shows that ALJ Kearney did take a fresh look at the relevant medical evidence during the new application period, and that he did not merely adopt the prior ALJ's RFC. In addition, ALJ Kearney addressed the medical opinion

evidence and concluded that all the evidence in the record supported the RFC and that the Plaintiff's "subjective complaints and alleged limitations" were "not fully persuasive." *Id.*, at PageID.44. In the opinion of the undersigned, the ALJ did not err in failing to apply *Drummond* and *Early*. He made a new analysis by taking a "fresh look" while being mindful of the past proceeding.

Next, Plaintiff argues that the ALJ failed to properly evaluate the opinion of Ms. Lowe, LPC. *See* ECF No. 5-8 (Medical Source Statement check box form). The ALJ addressed Counselor Lowes's opinion explaining:

> On February 27, 2023, Ms. Lowe completed a form about the claimant's mental capabilities. Ms. Lowe reported the following: (1) the claimant's mental abilities and aptitudes needed to do unskilled work range from "seriously limited, but not precluded" (meaning the ability to function in this area is seriously limited and less than satisfactory, but not precluded in all circumstances) to "unable to meet competitive standards" (meaning the claimant cannot satisfactorily perform this activity independently, appropriately, effectively and on a sustained basis in a regular work setting); (2) the claimant's ability to interact appropriately with the general public is "unable to meet competitive standards"; (3) the claimant's ability to maintain socially appropriate behavior is "unable to meet competitive standards"; (4) the claimant's ability to adhere to basic standards of neatness and cleanliness is "seriously limited, but not precluded"; (5) the claimant's symptoms are likely to be severe enough to interfere with attention and concentration needed to perform even simple work tasks 20% of the workday; and (6) on the average, the claimant's impairments or treatment would cause the claimant to be absent from work more than 4 days per month. Ms. Lowe explained that despite the use of psychotropics, the claimant presents at baseline with hypomanic symptoms including pressured speech, flight of ideas, and manic/depressive episodes. He also struggles with unresolved symptoms of PTSD including hyperarousal and hypervigilance (B1F).
>
> Although Ms. Lowe is not an acceptable "medical source" under the current SSA rules, the undersigned considered her input. In doing so, the undersigned finds that her input of such

> severe and extreme limitations is overall not persuasive. Her input is not persuasive because it is not consistent with the limited course of mental health treatment. As recounted above, on January 2, 2023, the claimant told Ms. Lowe, that he had recently been "in a dark place" regarding his symptoms and he noted that he "was treated poorly one too many times by the psychiatrist" at Woodlands. However, as of January 18, 2023, the claimant started to treat with Chidinma Isinguzo, MD, at Woodlands, instead. On February 15, 2023, the claimant told Dr. Isinguzo that he had immense benefit from Prozac and he no longer felt depressed (see above) and on May 3, 2023, the claimant told Dr. Isinguzo that his medications were working (see below). Although the claimant treated at Woodlands and Mighty Warrior Wellness on a regular basis, the claimant has not been psychiatrically hospitalized, there are no Emergency Department visits for acute psychiatric symptoms, and the claimant has not required or received frequent or intensive outpatient mental health services. The undersigned finds that Ms. Lowe's input of such severe and extreme limitations is not persuasive because it is not consistent with the claimant's ability to live alone. The undersigned finds that Ms. Lowe's input of such severe and extreme limitations is not fully persuasive because it is not supported by the overall mental status examinations of the claimant. While some of the mental status examinations of the claimant by Ms. Lowe show some abnormal findings (poor hygiene; agitated motor activity; pressured speech; distractible attention and concentration; and preoccupied thought content) (see above), the undersigned notes that these abnormal findings are atypical and notes the claimant was going through a difficult time related to his psychiatric services through Woodlands which he resolved by changing psychiatrists (see above). The overall mental status examinations of the claimant by Dr. Mehta and Dr. Isinguzo are generally unremarkable (see above and see below). Regarding Ms. Lowe's explanation, on examinations, there is pressured speech, but more often the claimant's speech is normal; there is no evidence of flight of ideas; and there is no evidence of hypervigilance.

ECF No. 5-2, PageID.40-41.

The ALJ evaluated the medical opinions pursuant to 20 C.F.R. §§ 404.1520c and 416.920c. Under that regulation, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)," even an opinion from a treating source. 20 C.F.R. §§ 404.1520c(a) and 416.920c(a). Instead, an ALJ will articulate his or her determination of the persuasiveness of a medical opinion "in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." 20 C.F.R. §§ 404.1520c(b)(1) and 416.920c(b)(1). Those factors include: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization;

and (5) other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1520c(c)(1)–(5) and 416.920c(c)(1)–(5). In general, the ALJ must explain his or her consideration of the supportability and consistency factors but the ALJ is not required to explain how the remaining factors were considered. 20 C.F.R. §§ 404.l520c(b)(2) and (3) and 416.920c(b)(2) and (3). The regulations explain "supportability" and "consistency" as follows:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)–(2) and 416.920c(c)(1)–2.

Plaintiff argues that in failing to take a fresh look at the record and adopting the prior ALJ's RFC limitations, the ALJ relied upon a selective reading of the medical record in determining that Ms. Lowe's opinion was not persuasive. The ALJ did more than simply adopt the prior RFC findings in determining that Ms. Lowe's opinion was not persuasive. The ALJ discussed Plaintiff's medical impairments and his mental health treatment at Woodlands, particularly with doctors Mehta and Isinguzo. In doing so, the ALJ addressed both abnormal and normal mental health findings. As a result, the ALJ adopted significant RFC restrictions to address these concerns. He did not make that finding in a vacuum; instead he made findings only

after he fully considered the evidence, including the opinions of state agency consultants Kriauciunas and Simone.

In the opinion of the undersigned, the ALJ properly considered Ms. Lowe's opinion under the Social Security regulations and substantial evidence supports his RFC decision. Plaintiff's argument is essentially that the ALJ should have weighed and evaluated the evidence differently. But that is not ground for relief. *Brown v. Comm'r of Soc. Sec.*, No. 1:23-CV-122, 2024 WL 1259726, at *5 (W.D. Mich. Feb. 7, 2024), *report and recommendation adopted*, No. 1:23-CV-122, 2024 WL 1251232 (W.D. Mich. Mar. 25, 2024), and *report and recommendation adopted*, No. 1:23-CV-122, 2024 WL 1258380 (W.D. Mich. Mar. 25, 2024).

## IV. Recommendation

Accordingly, it is respectfully recommended that the Court affirm the decision of the Commissioner because the ALJ did not commit legal error, and substantial evidence exists to support the ALJ's decision.

Dated: July 15, 2026

/s/ *Maarten Vermaat*
MAARTEN VERMAAT
U.S. MAGISTRATE JUDGE

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections

constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).